UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CR-008-CVE |
| | ) | |
| LESLIE SCHOBE THOMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is the Government's Motion in Limine Regarding Video Footage from Robberies Not Charged (Dkt # 68). As is clear from defendant's response to that motion, defendant seeks to admit video footage from two other robberies, which occurred on December 6, 2006 and December 29, 2006, and which are not charged in the Indictment. See Dkt. # 77, at 6. Defendant seeks to admit the footage as part of his defense that the person or persons who committed those other two robberies, and not defendant, committed the charged robberies. The United States seeks to exclude the footage of the non-charged robberies on the ground that it is irrelevant and would confuse the jury.

Defendant argues that excluding such evidence would infringe on his constitutional right to put on a defense in the form of third-party exculpatory evidence. He focuses primarily on Holmes v. South Carolina, 126 S. Ct. 1727 (2006). There, the Supreme Court addressed "whether a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict." Id. at 1729. The defendant sought to introduce evidence that a third party had attacked the victim, proffering at a pretrial hearing the testimony of

several witnesses who placed the other man in the victim's neighborhood on the morning of the assault, and the testimony of four additional witnesses who testified at the pretrial hearing that the third party had proclaimed the defendant's innocence or had admitted to having committed the crimes. The trial court excluded such evidence of third-party guilt. The South Carolina Supreme Court affirmed that decision and held that "where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to the appellant's own innocence." Id. at 1731 (quoting the South Carolina Supreme Court's opinion). The Supreme Court struck down the South Carolina Supreme Court's rule for the following reason:

> Under this rule, the trial judge does not focus on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt. Instead, the critical inquiry concerns the strength of the prosecution's case: If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues. Furthermore, as applied below, the rule seems to call for little, if any, examination of the credibility of the prosecution's witnesses or the reliability of its evidence.

Id. at 1734. The South Carolina rule, the Court explained, "does not rationally serve the end that the [State v.] Gregory, [198 S. Ct. 98 (1941),] rule[1] and its analogues in other jurisdictions were designed to promote, i.e. to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues." Id.

---

[1]   The Gregory rule is that evidence is admissible if it "raise[s] a reasonable inference or presumption as to [the defendant's] own innocence," but is not admissible if it merely "cast[s] a bare suspicion upon another" or "raises a conjectural inference as to the commission of the crime by another." 198 S. Ct. at 104. Contrary to defendant's assertion that the Supreme Court in Holmes held this Gregory rule unconstitutional, see Dkt. # 77, at 2, the Court held that the South Carolina rule, described above, was unconstitutional.

In <u>Holmes</u>, the Supreme Court noted that district courts may exclude evidence if it is repetitive, is marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. <u>Id.</u> at 1732-33. Further, evidence is properly excluded pursuant to Fed. R. Evid. 403 if its probative value is substantially outweighed by its prejudicial value. <u>Id.</u> Thus, if the Court were to exclude the footage of the other robberies, it would do so on the ground that such evidence is too remote or of marginal relevance, not on an evaluation of the strength of the United States' evidence against defendant. Therefore, the Court must determine whether the footage of the other two robberies has "only a very weak logical connection to the central issues" in the case or whether its probative value outweighs its prejudicial value.

One of the central issues in this case is the identity of the robber who committed the charged offenses. There is no dispute that the banks named in the Indictment were robbed; the main question is whether defendant is the person who committed any or all of the charged robberies. Defendant seeks to admit the evidence of the other robberies to raise a reasonable doubt that he committed the charged robberies. Specifically, he notes that one of the robbers in the "other" robberies "matches (at least [as] closely as Mr. Thompson matches) the physical descriptions of the robbers in this case, whose <u>modus operandi</u> is similar to the one employed in the robberies in this case, who is male, who is black, and who has pled guilty to committing a slew of similar robberies." Dkt. # 77, at 6.

By contrast, the United States argues that the Court should exclude the footage of the other robberies on the grounds that such evidence is irrelevant and that its probative value is outweighed by other factors such as confusion of the issues or potential to mislead the jury. It argues that the images of perpetrators of the two other robberies do not match the description of the perpetrator of the charged robberies. The United States attached still color photographs of the footage from the

3

other two robberies. The still photograph of the December 6, 2006 robbery shows a black man with a dark hooded sweatshirt. See Dkt. # 79, Ex. A. The man appears to be bald. The United States argues that the perpetrator's hairline does not match that of defendant or the persons in the videotapes of the charged crimes. The still photographs of the December 29, 2006 robbery show two persons: one person with a baseball cap, a dark jacket, and some sort of face covering that masks a majority of his face; and one person with a cream colored hooded sweatshirt which shields his face and dark gloves. See Dkt. # 79, Ex. B. The United States notes the existence of two armed robbers who disarmed the security guard does not match the modus operandi of the charged robberies. It points out other factual distinctions between the other two robberies and the charged robberies. Based on these factual comparisons, the United States argues that the footage of the December 6 and December 29 robberies is irrelevant and too "tenuous and speculative."

The primary issue is whether the factual distinctions between the other robberies and the charged robberies are so great as to render the footage of the other robberies irrelevant or only marginally relevant. Of course, to be relevant, the footage of the "other" robberies need not be identical to that of the charged robberies. Some dissimilarity will always exist between independent crimes. The Court is hesitant to deprive defendant of his constitutional right to present a defense based on its own factual assessment of the images presented, particularly in a case where identity is a central issue. Indeed, the jury as the trier of fact is in the best position to resolve factual inconsistencies. However, the Court serves as a gatekeeper of relevant evidence and will exclude the evidence if, in fact, the factual distinctions so overwhelm the similarities of the crimes as to render the footage irrelevant or only marginally relevant.

At this point, with only the still photos of the "other" robberies, the Court cannot determine whether the footage of those robberies is relevant. As the United States points out, "modus operandi is, at best, difficult to discern from still photos." Dkt. # 79, at 1. To determine whether the video footage of the December 6, 2006 and December 29, 2006 robberies should be admitted, the Court will conduct an evidentiary hearing outside the presence of the jury. The Court will view the footage of these two robberies in conjunction with the footage of the charged robberies and make a relevancy determination. The evidentiary hearing will be held Monday, March 19, 2007 after jury selection.

**IT IS THEREFORE ORDERED** that the Government's Motion in Limine Regarding Video Footage from Robberies Not Charged (Dkt # 68) is **taken under advisement**. The Court will hold an **evidentiary hearing** outside the presence of the jury to determine the admissibility of the video footage of the December 6, 2006 and December 29, 2006 robberies.

**DATED** this 15th day of March, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT